MERRIMAN and others, Appellants, vs. McCORMICK HARVEST-
ING MACHINE COMPANY, Respondent.

*June 11 — June 24, 1897.*

(1, 2) *Agency: Recovery for services rendered before discharge under con-
tract.* (3) *Statute of frauds: Part performance.* (4) *Sale of chattels:
Damages.*

1. A contract of agency for the sale of farm machinery provided for
the payment of a certain commission upon machines sold and
settled for, to be earned not by obtaining the orders alone, but by
receiving and setting up the machines, instructing the purchasers.
in their use, and securing settlements for them. It also gave the
principal the right to end the contract at any time and take into.
its possession all orders, notes, accounts, moneys, machines, or·
other property belonging to it in the hands of the agents. The
agents were discharged without cause after they had obtained,
orders and before the same had been filled. *Held*, that they were·
entitled to recover only a reasonable remuneration for their serv-
ices in obtaining orders which were afterwards actually filled with
the principal's machines.
2. The failure of the agents in such a case to surrender orders already
obtained, upon the termination of the contract, in compliance
with its terms, would not prevent them from recovering the rea-
sonable value of their services in obtaining such as the principal
afterwards actually filled.

3. An order for binding twine, filed with the general agent of the
   vendor and made subject to approval by its Chicago office, though
   void under the statute of frauds, became a binding contract by
   the shipment of portions of the twine on " terms as per contract,"
   and its acceptance by the purchaser.

4. Failure of the vendor to deliver goods according to the terms of a
   contract of sale does not give the vendee any right of action where
   the market price of the goods at the time of the default was the
   same as the contract price.

APPEAL from a judgment of the circuit court for Jefferson
county: JOHN R. BENNETT, Circuit Judge. _Reversed._

This is an action to recover agents' commissions for the
sale of harvesting machines, and to recover damages for the
failure to perform contracts for the sale of binding twine.
The action was tried before a referee.

It appeared by the evidence that the plaintiffs were in
business at Ft. Atkinson, in the county of Jefferson, and had
been the agents of the defendant company for the sale of
harvesting machines and binding twine for several years
prior to the 5th day of December, 1892, at which time a new
agency contract was made for the season of 1893. Said
contract was in writing, and provided that the Merriman
Bros. become the agents of the defendant for the sale of
harvesting machines, twine, and repairs for a certain terri-
tory in and about Ft. Atkinson during the season of 1893;
that the agents should canvass the territory, obtain orders
for the machines, house the machines and keep them in good
order, deliver, set up, and fairly start every machine sold,
and instruct the purchaser how to adjust it for work; also
to draw all notes payable to the order of the _McCormick
Harvesting Machine Company_ upon its blanks; to sell all
machines upon terms prescribed by the company, and settle
for machines sold, either by cash or note, at the time of de-
livery; to furnish the defendant full and detailed accounts
of sales; to order all twine, binder trucks, bundle carriers,
and repairs which might be needed for the machines from

Merriman and others vs. McCormick Harvesting Machine Co.

the defendant,— for all of which the defendant agreed to pay its said agents a selling commission of twenty-five per cent. on all cash received on sales, and twenty-three per cent. upon all notes taken on sales to good and responsible parties. " Commissions shall only be paid on machines sold and settled for, and none shall be paid on machines returned condemned, or on orders that are not filled."

The contract further provided that the agents agreed " not to retain, on account of commissions or other claims against the said *McCormick Harvesting Machine Company*, any money, notes, or other property received from sales of machines, twine, binder trucks, bundle carriers, flax dumps, repairs, or any other property, or collections on notes or accounts, but to promptly remit all moneys, notes, or other property to said company or their authorized general agent, leaving the commissions and any other claims to be determined and paid at settlement. . . . It is further mutually agreed that said *McCormick Harvesting Machine Company* shall at all times have exclusive and entire control over orders, contracts, notes, moneys, and assets or other property accruing and growing out of the sale of said machines, twine, binder trucks, bundle carriers, flax dumps, repairs, or other property, whether for this or previous years, and may at any time annul and determine this and all other prior contracts, and take possession of all orders, notes, accounts, moneys, machines, twine, binder trucks, bundle carriers, flax dumps, repairs, and other property in the hands of said Merriman Brothers & Company, by virtue hereof."

Early in March, 1893, the plaintiffs began to canvass and take orders for the delivery of binders and mowers, and up to the 22d day of March had obtained twenty-nine orders in writing. Upon the 22d day of March the general agent of the company annulled and determined the contract, and gave written notice of such annulment to the plaintiffs. At

the time said contract was annulled none of the machines had been delivered to any of the purchasers, except one machine upon order No. 14, which had been delivered to the purchaser, and, after the cancellation of the contract, the company received the note of the said purchaser in the sum of $135 therefor. Prior to the cancellation of the contract, the defendant had shipped to the plaintiffs, and the plaintiffs had received and stored, at London, Dane county, nine harvesters and twelve mowers, upon which the plaintiffs had advanced freight amounting to $48.18, which by one of the provisions of the written agreement of agency the defendant was to pay. At the time when the contract was canceled, there was a personal interview between the plaintiffs and the general agent of the defendant, and said general agent demanded that the plaintiffs deliver up the twenty-nine orders for machines. The plaintiffs, however, refused to deliver the same, and claimed them as their own. The plaintiffs also refused to deliver the machines and other property of the defendant then in their possession, and on the same day the defendant took possession of all of its machines and other property, whether at Ft. Atkinson or at London. The plaintiffs never delivered, set up, or started any of the machines mentioned in the orders, nor instructed the purchasers how to work the same. At the time of the cancellation of the contract, the general agent of the defendant offered to settle with plaintiffs for what they had done in pursuance of the contract, but the agents refused to settle. The defendant sent out new agents, and did in fact deliver machines to a large number of the persons who had given their orders for machines to the plaintiffs, but just how many of such orders were so filled does not appear. The plaintiffs within a few days secured the agency of another reaper, and made some efforts to furnish other machines of a different make to the parties who had ordered McCormick machines, and in fact did replace four of the McCormick machines so ordered with other machines.

At the time of making the agency contract, the plaintiffs filed with the general agent of the defendant two orders for binding twine at certain fixed prices,— one for 25,000 pounds, to be shipped on or about the 1st day of May, 1893, and another of like amount to be shipped upon order. These orders were made subject to approval at the defendant's Chicago office, and on the 5th day of January, 1893, the plaintiffs ordered from defendant one fifty-pound sack of each kind, making 150 pounds in all, and the same was shipped to them February 18, 1893, with the following notation upon the bill: "Terms as per contract." On the 23d day of March, 1893, the plaintiffs ordered a car load to be shipped, but the defendant refused to fill the order, and notified plaintiffs that they declined to fill any orders for twine.

The referee found that the plaintiffs were entitled to recover their commissions upon the sale of twenty-six machines, amounting to $708.11; that the plaintiffs were also entitled to recover damages for the defendant's failure to furnish certain bundle carriers and trucks, which the plaintiffs ordered, in the sum of $20; that the defendant was indebted to the plaintiffs in the sum of $224.16 on account of the failure to furnish the car load of binding twine; that the defendant was also indebted to the plaintiffs in the sum of $48.18 on account of freight paid; that the plaintiffs were indebted to the defendant in the sum of $57.47 for the expenses of expert canvassers furnished plaintiffs by defendant prior to the cancellation of the contract.

These conclusions of the referee were entirely set aside by the circuit court, which concluded, upon substantially the same facts as found by the referee, that plaintiffs were not entitled to any commissions upon any of the orders taken, except upon the one note before mentioned, where the machine had been shipped before cancellation; that the twine contract was never in fact a contract valid in law between the parties, because it was for goods of greater value than $50, and was not in writing, subscribed by defendant; that

no damages accrued to plaintiffs on account of nondelivery of said twine, because the price thereof did not advance any from December 5, 1892, to April 1, 1893; that the defendant was indebted to the plaintiffs at the time of the commencement of this action on account of freight paid in the sum of $48.18, and on account of commissions upon the sale of one machine $31.05, making a total of $79.23; and that the plaintiffs were indebted to the defendant for the necessary expenses of expert canvassers in the sum of $57.47, which, being offset against $79.23, left a balance due plaintiffs at the commencement of the action of $21.76, for which sum judgment was rendered for the plaintiffs, and the plaintiffs appealed.

*L. B. Caswell* and *W. H. Rogers*, for the appellants.

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *J. V. Quarles*.

WINSLOW, J.    There was no very serious dispute as to the facts of the case, nor is there any very material difference between the findings of fact made by the referee and those made by the circuit judge (except with regard to the failure to fill the order for binding twine, which will be considered later); but there was a radical difference between the legal conclusions resulting from the facts.    The referee was of opinion that the plaintiffs were entitled to recover their full commissions upon all machines for which they had taken orders, except where they afterwards furnished a different machine; while the circuit judge concluded that they were entitled to no compensation for their services in obtaining the orders, save for the one machine delivered before the cancellation of the contract.

We find ourselves unable to agree with either conclusion. We think, under the provisions of the contract, the plaintiffs were entitled to recover the reasonable value of their services in obtaining the orders for machines which were

Merriman and others vs. McCormick Harvesting Machine Co.

afterwards actually filled with McCormick machines, and no more. The reason for this conclusion we will briefly state. The contract provides for a certain commission upon the sale of each machine, which is to be earned, not by obtaining the order alone, but by receiving and housing the machine, setting it up and running it, instructing the purchaser, receiving and transmitting the money or notes therefor, and by rendering other services connected with the sale. Manifestly the contract is entire as to each commission, and is not earned except by the performance of all the requirements. Furthermore, there is a special provision that commissions shall only be paid on machines sold and settled for, and none shall be paid on orders *not filled*. Had the plaintiffs brought action for their commissions after taking the orders and prior to the cancellation of the contract, it is very certain that they could not recover them, because they had not been earned, nor could they have recovered upon *quantum meruit*, because the contract is an entire contract as to each commission. Now the theory upon which the referee allowed the entire commission was that by the cancellation of the contract the defendant had rendered it impossible for the plaintiffs to carry it out, and hence that they ought to recover the full commission, because they were ready to carry it out, but were prevented by the defendant from doing so.

The well-settled rule is that when a contractor's performance is stopped by the *fault* of the employer, he may recover upon *quantum meruit* for what he has done, and also may recover damages for being prevented from completing the work. 2 Suth. Dam. (2d ed.), § 713. But this second element of damages, i. e. the damages resulting from being prevented from completing the work, are plainly given because of the wrongful stoppage of the work. Where the stoppage is absolutely rightful and in strict accord with contract provisions, there can be no damages, because damages do not

arise from the proper exercise of a legal right. Now in the present case the parties had agreed that the defendant might *at any time* end the contract, and take into its possession all *orders, notes, accounts, moneys, machines,* or other property of the defendant in the hands of the plaintiffs. The provision is certainly very drastic, but it is admittedly a part of the contract, and no claim of fraud or mistake is made with reference to it. Under these circumstances the court's duty is simply to construe it. It was put in the contract with a definite purpose, and that purpose plainly was to give the defendant power to end the agency at any time and place the entire business in other hands. This power must be reasonably construed. It should not be construed as depriving the plaintiffs of reasonable remuneration for their services already rendered in obtaining orders which are afterwards filled with McCormick machines, but it certainly must be construed as authorizing the defendant lawfully to end the agency at any time, and thus rightfully to prevent the earning of the full commissions. It was certainly the duty of the plaintiffs to surrender up the orders they had taken to the defendant when the contract was canceled. Not only does the contract provide that they shall do so, but it further provides that they shall not retain any of defendant's property in their hands as security for commissions. We do not think, however, that, where it can be shown that any such order was afterwards actually filled with a McCormick machine, this failure of duty should prevent the plaintiffs from recovering the reasonable value of their services in obtaining the order. As it cannot be ascertained from the evidence just how many of the orders taken were afterwards filled with McCormick machines, nor what the reasonable value of the preliminary canvassing and procuring of such orders was, further testimony must needs be taken upon these questions.

We see no need of disturbing the conclusions of the cir-

cuit court as to the binding twine. While we think that the contract was a binding one, made so by the delivery and acceptance of a part of the goods, still the finding that the price of twine remained unchanged from December, 1892, until April 1, 1893, is founded upon sufficient evidence, and we shall not disturb it. This being the case, the refusal to fill the order for a car load of twine, made March 23, 1893, produced no damage.

It will not be necessary to retry the case. The court below can ascertain by additional testimony, taken either in open court or before a referee, how many of the orders taken were filled with McCormick machines, and what was the reasonable value of plaintiffs' services in obtaining such orders. For this sum the plaintiffs will be entitled to credit, as well as for the sum of $48.18 for freight advanced. The defendant will be entitled to credit for $57.47, being for expenses of expert canvassers who assisted the plaintiffs. The party having the greater credit will be entitled to judgment for such excess. The case will not be reopened further than above indicated.

*By the Court.*— Judgment reversed, and action remanded for further proceedings in accordance with this opinion.