[No. 7896.  Department Two.  Decided July 17, 1909.]

WEST COAST MANUFACTURERS' AGENCY, *Respondent*, v.
OREGON CONDENSED MILK COMPANY, *Appellant*.[1]

FACTORS—SALES ON COMMISSION—CONTRACT—CONSTRUCTION.  Under a contract for the sale of defendant's goods on commission, which fixed the plaintiff's compensation at a certain sum for every case "actually sold, delivered and paid for," nothing to be paid until the money shall be received by the defendant from the purchasers, the plaintiff was not entitled to commissions on orders taken and not filled at the time of the termination of the agreement.

DAMAGES—LIQUIDATED DAMAGES—CONTRACTS—CONSTRUCTION—TERMINATION.  Where a manufacturer's agency contract for the exclusive sale of defendant's goods fixed plaintiff's compensation at a certain sum for every case "actually sold, delivered and paid for," nothing to be paid until the money shall be received by the defendant, a provision in the contract that, in case of a sale of its manufacturing plant the defendant shall be absolved from any damage or liability by reason of the termination of, or failure to carry out, the contract, except $500 as stipulated damages, includes loss of commission on unfilled orders for goods sold by the agent before the sale of the plant, which the defendant thereafter refused to deliver, the measure of plaintiff's damage by reason of defendant's refusal to deliver goods ordered before termination of the contract being included in the $500 stipulated for.

Appeal from a judgment of the superior court for King county, Walter B. Beals, Esq., judge *pro tempore*, entered September 18, 1908, upon findings in favor of the plaintiff, in an action on contract, after a trial before the court without a jury.  Reversed.

*Weter & Roberts*, for appellant.

*M. M. Lyter* ( *H. D. Folsom, Jr.*, of counsel), for respondent.

PARKER, J.—This is an action to recover commissions and liquidated damages upon the termination of a commission contract entered into between the parties.  The cause was tried by the court without a jury, when findings of fact and

[1]Reported in 103 Pac. 4.

conclusions of law were made and judgment rendered thereon favorable to plaintiff, from which the defendant appealed to this court.

No exceptions were taken to the findings of fact, the only contention being upon the conclusions of law, to which the appellant duly excepted. The contract is set out at length in the findings, and its provisions, so far as necessary to be noticed in our determination of the respective rights of the parties, are as follows:

"This article of agreement, made and entered into this 2nd day of July, 1906, by and between the Oregon Condensed Milk Company, a corporation formed, organized and existing under and by virtue of the general incorporation laws of the State of Oregon, doing business at Hillsboro, Oregon, party of the first part, and the West Coast Manufacturers' Agency, a corporation formed, organized and existing under and by virtue of the general incorporation laws of the State of Washington, with its principal office at Seattle, Washington, party of the second part, witnesseth:

"That whereas the party of the first part is the manufacturer of evaporated cream, manufactured, packed and sold under labels known as Oregon Grape and Pacific; and

"Whereas the party of the second part is doing business in the State of Washington, State of Oregon, and Territory of Alaska as a manufacturers' agent;

"Now, therefore, this agreement witnesseth: That the party of the first part does hereby give and grant to the said party of the second part the agency for the sale of Oregon Grape and Pacific creams, and such other brands as may be hereafter manufactured and placed upon the market by the said party of the first part, in Western Washington, State of Oregon and Territory of Alaska, for a period of five years from the date of this contract, subject to the conditions and agreements and compensations hereinafter set forth and provided.

"RETAIL TRADE. The party of the second part undertakes and agrees to sell said brands of cream in the State of Oregon, Territory of Alaska and Western Washington, direct to the retail trade; to maintain a depot at Seattle, and a depot at Portland; to work the retail trade of said states and said territory thoroughly, keeping not less than two travel-

ing salesmen employed in Western Washington and not less than one traveling salesman constantly in the State of Oregon, and to use its best efforts to secure sales of cream in the Territory of Alaska during the whole of said period of five years.

"The party of the second part further undertakes and agrees to do all billing of cream so sold in triplicate, the original invoice to be delivered to the purchaser, the duplicate to be returned to the party of the first part, and the triplicate to be retained by the party of the second part, all such cream so sold by the party of the second part to be delivered from its depot or from the factory of the party of the first part or from railroad yards or other points more accessible.

"COMPENSATION. The party of the first part undertakes and agrees to pay to party of the second part as compensation for the sale of its products in Western Washington, State of Oregon and Territory of Alaska, twenty cents per case for every case of cream actually sold, delivered and actually paid for, by whomsoever sold, during the time this contract is in force and effect, said twenty cents per case to be paid to the party of the second part between the first and tenth of each month and be computed from the cash book of the party of the first part on moneys received from sales of said cream in said territory hereinbefore mentioned for the month previous (but no amount shall be paid upon any sales so made until the money shall be received by the party of the first part from the purchaser of said cream).  .  .  .

"STORAGE. It is further understood and agreed that the party of the second part shall maintain said depots during said period of five years and shall store all necessary stocks of cream free of charge,  .  .  .

"COLLECTIONS. It is further understood and agreed between the parties to this contract that the party of the second part, its officers and agents, shall make every effort and lend every assistance toward the collections of all accounts in the territory herein specified,  .  .  .

"SALE. It is further distinctly understood and agreed between the parties to this contract that in the event the party of the first part shall sell its factory, in that event the party of the first part shall use its best endeavors to require the purchaser to assume this contract and the fulfillment of its terms, but in the event the party of the first part is unable

to require the purchaser to assume this contract, in that event the party of the first part shall be absolved from any damage or liability by reason of the termination and by reason of not fulfilling or carrying out the terms of this contract, other than the payment to the party of the second part of five hundred dollars as liquidated damages. . . .

"REFUSAL. It is further understood and agreed that in the event the party of the first part shall be offered a fair price for its factory and shall be desirous of selling the same, that the party of the second part shall have the refusal to purchase said plant at the price offered by said purchaser or purchasers; provided that the said party of the second part shall within ten days after notice, accept or refuse to take said plant at the price so offered. . . .

"CREAM. It is understood and agreed that the party of the first part will furnish and supply cream to the party of the second part of its own manufacture to fill orders taken at the prices fixed and provided by the party of the first part in the territories mentioned, except if the party of the first part shall be prevented from so doing by causes not under its control. . . ."

It appears from the court's findings that, on February 21, 1907, appellant found a purchaser for its plant, and on the 24th day of February, 1907, the respondent released its ten-day option to purchase under the contract, in order to enable the appellant to immediately make a sale of its plant, for which release appellant agreed to pay to respondent ninety per cent of the commission to become due on all goods sold by respondent for appellant under the contract, and which had then or should thereafter be delivered to the purchasers, treating all such sales and accounts as good and collectible for the purpose of settlement of the ninety per cent of such commission. There remains due and unpaid from appellant to respondent $180.10 upon such commission.

The appellant consummated the sale of its plant March 5, 1907, and notified respondent of the sale. Prior to this time, respondent had taken orders for a large amount of the product of the appellant in pursuance of the terms of the contract, which appellant refused, after the sale of its plant,

to deliver. The total amount of such unfilled orders was such that respondent's commission thereon under the contract would have been $3,052.59 had appellant filled such orders and made collections thereon from the purchasers. At the time of the termination of the contract by reason of the sale of the plant, there was due from respondent to appellant the sum of $2,411.25, on account of collections made and other small items, which was claimed by appellant in its affirmative answer as a counterclaim, and for which it prayed judgment against the respondent. The court concluded that there was due from appellant to respondent the items of $180.10, $3,-052.59, and $500 liquidated damages, making in all $3,-732.69, from which it deducted appellant's counterclaims, amounting to $2,411.25, and rendered judgment against appellant for the balance of $1,321.44.

Appellant contends that the learned trial court erroneously allowed the item of $3,052.59 in respondent's favor, and that appellant was entitled to judgment against respondent for the sum of $2,411.25, the amount of the counterclaim less the items of $180.10, unpaid commissions, and $500, liquidated damages.

By the express terms of the contract the commission which might become due to the appellant was to be "twenty cents per case for every case of cream actually sold, delivered and actually paid for;" and for the seeming purpose of emphasizing this provision, if indeed language could make it plainer, the contract further provided, in connection with payment of commission: "but no amount shall be paid upon any sales so made until the money shall be received by the party of the first part from the purchaser of said cream." Taking these provisions, especially in connection with the other services respondent was to render relative to the storing, billing, and collections, it becomes plain that respondent did not earn and is not entitled to the commission by the mere taking of orders, nor until the goods are actually delivered to and paid for by the purchasers. It necessarily follows, then, that re-

spondent cannot recover any such commission until after goods are delivered and paid for. So its right to recover in this action, except as to the item of $180.10 unpaid commissions, becomes simply a question of damage by reason of appellant's failure to carry out the terms of the contract, in not filling orders and furnishing goods after the sale of its plant. The measure of this damage is the real subject of our inquiry. What respondent may have done in the way of procuring orders, and in rendering other services under the contract, looking to the sale of goods, no doubt would enter into the measure of damages had not the contract in express terms made provision for a fixed measure of such damage which might result to the respondent upon the happening of the very contingency which resulted in the termination of the contract by the appellant.

It is not contended by respondent that appellant failed to use its best endeavors to require the purchaser of the plant to assume the contract and fulfill its terms in place of appellant; so there is nothing in the way of giving its terms as to liquidated damages full force and effect, which, in the event of sale of the plant, is that, *"the party of the first part [appellant] shall be absolved from any damage or liability by reason of the termination and by reason of not fulfilling or carrying out the terms of this contract, other than the payment to the party of the first part of $500 as liquidated damages."*

The trial court held in effect that the $500 liquidated damages did not cover loss of commission upon goods for which orders had been procured and not delivered at the time of the sale of the plant, and the termination of the contract, but covered only damages resulting from loss of commission upon sales which might be earned thereafter during the life of the contract, if continued in force. We are unable to agree with this contention. The language of the contract seems to us too plain for construction, and to be susceptible of no other meaning than that appellant was to be absolved

from all damages, including loss of prospective commission on goods ordered and not delivered, as well as loss of commission on prospective future orders, other than the payment to respondent of $500 as liquidated damages.

Our view, that by the terms of the contract the commission is not earned until goods are delivered and actually paid for, finds support in the case of *Merriman v. McCormick Harvesting Machine Co.*, 96 Wis. 600, 71 N. W. 1050. In that case the harvester company had broader powers as to the termination of its agency contract than the appellant here, but this appellant was as clearly within its rights in terminating this contract as the harvester company was in that case. So far as the rights of the agent to commission was concerned, the principle involved was the same. In that case the court held that the agent could not recover commission after termination of the contract, but was entitled to recover upon *quantum meruit* the reasonable value of the services in obtaining orders for machines which were afterwards actually delivered by the harvester company; but it is not claimed here that appellant filled any of the orders by dealing directly with the purchasers from whom respondent had obtained orders, and thus profited by respondent's service.

We are of the opinion that the learned trial court was in error in allowing respondent the item of $3,052.59, on account of commission on orders for goods not delivered, and that appellant was entitled to have judgment upon its counterclaims amounting to $2,411.25, after deducting therefrom the items of $180.10, balance due upon commission, and the $500 liquidated damages, which became due to respondent upon the termination of the contract.

The judgment of the superior court is reversed, with instructions to enter judgment in favor of appellant against respondent in accordance with this opinion.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.