[No. 21314. Department One. May 9, 1929.]

HAROLD V. SMITH, *as Receiver, Appellant,* v. CADILLAC
MOTOR CAR COMPANY, *Respondent.*[1]

[1]Reported in 277 Pac. 453.

132

*Patterson & Patterson,* for appellant.

*A. M. Levert* and *Riddell, Brackett & Fowler,* for respondent.

BEALS, J.—Sunset Motor Company, a Washington corporation, was, for some time prior to July 1, 1924, under an agreement with defendant, Cadillac Motor Car Company, a corporation, acting as distributor of Cadillac automobiles for the greater part of the state of Washington. This relationship having been terminated by notice from defendant dated May 20, 1924, effective July 1, 1924, the Sunset Motor Company instituted this action for the purpose of recovering judgment upon four several causes of action. After the

commencement of the suit, plaintiff was appointed receiver of the Sunset Motor Company and substituted as plaintiff herein.

At the trial of the action, the court granted defendant's motion for a dismissal on the merits as to plaintiff's third cause of action, and sustained a demurrer *ore tenus* to the fourth cause of action (of which latter ruling plaintiff does not complain). The action was tried to a jury, and resulted in a verdict in favor of defendant upon the first and second causes of action. A judgment of dismissal was entered, from which plaintiff appeals.

Appellant assigns error, first, in connection with the admission of evidence offered by respondent in connection with appellant's first cause of action, and to the giving of an instruction referring to this cause of action; second, on the giving of an instruction in connection with appellant's second cause of action; third, upon the granting of respondent's motion for an order dismissing appellant's third cause of action on the merits; and, last, upon the admission of certain testimony over appellant's objection.

For the purpose of brevity the Sunset Motor Company will be referred to as appellant.

In its first cause of action, appellant sought to recover damages in the sum of $993.75, which it claimed as commission on the sale of an automobile to Mr. J. W. Clise. The contract under which appellant was distributing Cadillac cars during the first portion of the year 1924, bore date January 2, 1923. According to the terms of this contract, respondent could cancel the same at any time, and during the month of May, 1924, respondent notified appellant that its distribution contract was cancelled, effective July 1 of that year. No successor to appellant having been designated by respondent, Mr. Pratt, an officer of appel-

lant, under date June 30, 1924, wired respondent as follows:

"Newton assured us purchase price of plant and successor would be ready July one. Nothing done to indicate any change. Important that business proceed as usual until all matters are taken over. Will you so instruct your representatives to that end and let contract remain in force until deal is actually consummated."

To which message, respondent, under date July 16, wired its answer:

"Satisfactory with us for you to continue to sell and service Cadillac cars until new arrangements are completed. Stop. We will notify you of progress as soon as possible."

Appellant, having obtained an order from Mr. Clise, sent the same, with other orders, to respondent. Considerable delay elapsed in the delivery of the car, and on December 23 Mr. Clise cancelled his order. Appellant contends that it is entitled to the profit it would have made on the sale of the car, and assigns error upon the admission of certain evidence offered on the part of respondent, and on the giving of an instruction referring particularly to the first cause of action.

It is clear that at no time was appellant the agent of respondent. The contract between the parties, providing for the distribution of Cadillac cars through appellant, was carefully drawn with a view to preventing the establishment of the relation of principal and agent between the parties. We are satisfied that, by its wire to appellant dated July 16, *supra,* respondent made no change in the previous status of the parties, and that, from then on, appellant merely had the right it had previously enjoyed to sell Cadillac cars, and that no other or different relation between the parties was established.

Respondent introduced testimony to the effect that all orders for cars were, by it, accepted upon its printed form, number 3501, which form contained the following provision:

"This order is accepted subject to delays caused by conditions of material, fuel and labor markets, strikes, fires, transportation difficulties and other matters beyond the control of this company, rendering the performance of this contract commercially impracticable; it being understood that this company shall not be liable for loss or damage for its failure to deliver goods ordered."

No original acceptance of this order of any sort was produced by appellant, though the same was called for by proper notice on the part of respondent, and it was stated that no such document could be found among appellant's files. Respondent's witnesses testified that its retained copies of such orders were kept for a year and then destroyed, and that any copy of the acceptance of the Clise order retained in its file would have been destroyed pursuant to this practice prior to the institution of this action. Several witnesses on behalf of respondent testified that this form was always used by respondent for the purpose of signifying acceptance of orders from its distributors. No record was offered in evidence which tended to prove that, in this particular instance, this form had been used or mailed to appellant, nor was any direct testimony to that effect produced. There was not offered, as a witness on behalf of respondent, any clerk who testified that it was his particular duty, at the time of the receipt of the order for the Clise car, to fill out or sign the form used for accepting such orders, respondent's testimony being limited to the fact that it was the general routine at that time to so signify acceptance of all orders. Respondent's witnesses also

testified as to the method followed by respondent in assigning to each order for a car a designation composed of a combination of figures and letters. Witnesses who had been in the employ of appellant testified that it was the custom of respondent to accept each order for a car sent to it by appellant upon form 3501.

October 15, appellant wired respondent as follows:

"Can you finish 2 pass coupe, your order 9 B 301 in duco? Stop. Customer now expresses wish for duco finish. Would there be any delay in shipment if finished so what additional cost. Wire fast message."

The same order number was used by appellant in another message to respondent referring to the Clise order.

The designation of the order referred to in the telegrams from appellant being, according to respondent's testimony, exactly such a number as would have been by respondent assigned to the order for the Clise car, respondent argues that manifestly this order number was a portion of an executed form 3501 sent to appellant by respondent, and that appellant could have obtained this order number only from a copy of this form completely filled out.

In this connection, it is important to note that no direct testimony was offered by appellant to the effect that no copy of respondent's form number 3501 was ever received at appellant's office. The testimony offered was negative merely to the effect that no copy of any such form referring to the order of the Clise car could be found at, or just prior to, the time of the trial. No other letter or form of notice from respondent to appellant concerning this order was found, appellant's file apparently being entirely blank on this point. It is, of course, a reasonable deduction from the evidence that appellant did receive some acknowl-

edgment from respondent of the receipt of the order and an acceptance thereof, as appellant, in communicating with respondent, used, in referring to the order, a number which it, according to respondent's testimony, could have received only from respondent, and several times in letters to respondent referred to the order as having been accepted by respondent. While it is doubtless true that the testimony as to the custom prevailing in respondent's establishment concerning the use of its form number 3501 would not have been competent, if standing alone, under the authorities cited by appellant, to have justified the admission of secondary evidence as to what word was mailed by respondent to appellant, still we think, in view of the very peculiar position presented by the evidence in connection with the point under discussion, the testimony was competent as having some bearing upon the means by which appellant received the number assigned to the order for the Clise car, and notice of the acceptance of the order itself, which order number appellant itself used. Appellant offered no evidence whatsoever as to what acknowledgment it did receive from respondent concerning this order, but it is clear that it received from respondent some notice concerning the same. We are satisfied, in view of all the circumstances of the case, that the trial court committed no error in admitting the testimony of which appellant complains.

█ In connection with the first cause of action, appellant assigns error upon the giving of the following instruction:

"If you find that the defendant accepted the order for the Clise car on its form No. 3501 upon the following condition:

" 'This order is accepted subject to delays caused by conditions of material, fuel and labor markets,

strikes, fires, transportation difficulties and other matters beyond the control of this company, rendering the performance of this contract commercially impracticable; it being understood that this company shall not be liable for loss or damage for its failure to deliver goods ordered,'
and that said acceptance containing said clause was sent to plaintiff company by defendant, you will return a verdict for the defendant.''

By this instruction, the court properly submitted to the jury the question of whether or not appellant did receive from respondent an acceptance of the order for the Clise car on its form number 3501. If the jury found upon this question in favor of respondent, then the trial court concluded, as matter of law, that appellant could not recover upon this cause of action. With this conclusion, we agree. The portion of respondent's form number 3501 above quoted exempts respondent from liability in case of its failure to deliver the goods ordered. The parties to this action had been dealing under this arrangement for a long period of time. The condition is a harsh one, but, when agreed to by the parties, even harsher conditions have been upheld. *West Coast Mfg. Agency v. Oregon Condensed Milk Co.,* 54 Wash. 247, 103 Pac. 4.

Appellant urges that the instruction was improper because appellant contended, and supported its contention by some testimony, that it was orally agreed between the parties that, after the cancellation of appellant's right to act as distributor of respondent's cars, which right ceased July 1, 1924, respondent employed appellant to make sales of its automobiles upon a straight commission or brokerage basis, and that respondent specifically agreed to fill such orders as it should receive from appellant. While there is some testimony in the record which may bear the construction sought to be placed upon it by appellant, this

testimony was not sufficient to raise an issue for submission to the jury, as we hold that, as matter of law, it was insufficient to contradict the writings which it was admitted were exchanged between the parties, and under which appellant acted after July 1, 1924.

We conclude that appellant's assignments of error in connection with the verdict against it returned by the jury upon the first cause of action are without merit.

Appellant next assigns error upon the giving of the following instruction in connection with its second cause of action:

"Irrespective of the existence of any controversy between Sunset Motor Company and Cadillac Motor Car Company, that is to say, whether there was a controversy, or whether there was not one, still if you find that, subsequent to May 20, 1924, Mr. Habel, acting on behalf of Sunset Motor Company, and Mr. Rice, acting on behalf of Cadillac Motor Car Company, agreed that Cadillac Motor Car Company should receive a portion of the stock of parts of the Sunset Motor Company upon which this suit is based and pay for them, and if you find that there was such an agreement between Mr. Rice and Mr. Habel acting as aforesaid, and that that agreement, if there was one, was carried out between the parties and the parts accepted and paid for, then I charge you that, as a matter of law, the second contract between parties covering the subject-matter of a prior contract, if there was a prior contract, automatically cancels the prior contract and your verdict, if you so find, must be for the defendant."

In this cause of action, appellant sued for damages which it alleges it sustained by reason of respondent's failure, upon the termination of appellant's distributorship, to repurchase from appellant new and unused parts for Cadillac cars which appellant then had on hand and which it claims that respondent

·agreed to repurchase. Under the agreement between the parties, by which appellant was acting as distributor of Cadillacs, respondent had the right, in case of termination of the contract, at its option to be exercised within thirty days after the termination of the contract, to repurchase from appellant at cost plus freight, all or any portion of the automobiles, accessories, or parts then owned by appellant. This was strictly a unilateral option which respondent alone could exercise. Appellant claims that respondent, through a duly authorized agent, agreed to repurchase all of the parts in appellant's possession July 1, 1924. Upon the trial, it was stipulated that, if appellant was entitled to recover upon this cause of action at all, its damages amounted to the sum of $4,200. The jury returned a verdict on this cause of action in favor of respondent.

It appears that, sometime after July 1, 1924, and sometime after the date of the alleged agreement to repurchase, $6,000 worth of parts were, by agreement of the parties, returned by appellant to respondent, and paid for. Respondent contended, and the trial court adopted its theory, that the agreement by respondent to repurchase these parts amounted in law to a novation, and did away with any prior contract which might have existed between the parties concerning this matter.

Appellant argues that the agreement for the return of these parts by appellant and the acceptance thereof by respondent, was not inconsistent with the contract which appellant claimed had been made between it and respondent for the repurchase of all the parts.

It is undoubtedly the law that the legal effect of a subsequent contract between the same parties and covering the same subject-matter as an earlier agreement between them, containing terms inconsistent with the

prior contract, so that the two cannot stand together, is to rescind the earlier contract. *Sherman v. Sweeney,* 29 Wash. 321, 69 Pac. 1117.

In considering the application of this rule, each case presented must be considered on its own state of facts and in connection with all the surrounding circumstances. Whether or not appellant introduced any evidence sufficient to go to the jury upon its second cause of action, is doubtful, but a careful consideration of the testimony and the authorities convinces us that, in any event, the instruction complained of was correct, and that the court was warranted in instructing the jury that, if they found that the later contract between the parties for the repurchase of a portion of the parts and accessories in the possession of appellant was, in fact, entered into, as claimed by respondent, the making of this contract, which was actually carried out, in law amounted to the rescission of any earlier contract, if one was ever made.

Appellant complains of the admission of certain testimony on the part of respondent, which appellant claims was not admissible under the pleadings, and which it contends was prejudicial. Mr. G. E. M. Pratt, testifying on behalf of appellant in regard to conversations with Mr. R. L. Newton, an employee of respondent, stated that Mr. Newton, on behalf of respondent, had verbally agreed to purchase the automobile parts in possession of appellant. Mr. Newton, in testifying as to his version of the conversation between Mr. Pratt and himself, was, by the court, permitted to testify as to statements which he claimed to have then made to Mr. Pratt concerning complaints as to the conduct by the officers of appellant of its business, in so far as the same concerned appellant's relations with respondent. The testimony of Mr. Pratt and Mr. Newton varied greatly as to the conversations

between them. Mr. Pratt was allowed, over respondent's objection, to testify as to matters of conversation between himself and Mr. Newton not strictly germane to the alleged contract for the repurchase of the automobile parts. In his turn, Mr. Newton was allowed to detail fully his version of the conversations between himself and Mr. Pratt. We have read the testimony of Messrs. Pratt and Newton, and find no reversible error in any rulings of the trial court concerning the same.

Appellant next assigns error upon the granting of respondent's motion, made at the close of appellant's case, for a dismissal of appellant's third cause of action, as matter of law.

In this cause of action, appellant alleges that, under its agreement with respondent, it was to sell automobiles manufactured by respondent upon a sliding scale, that is, as the amount of sales made by appellant increased, the amount which appellant was to receive should also increase. Appellant claims a certain sum due it under this agreement for the year 1920, the arrangement between the parties concerning this matter varying from year to year. Appellant's claim is based upon a letter, under date February 19, 1920, received by it from respondent, the material portions of which are as follows:

"February 19, 1920.
"Sunset Motor Company,
"Seattle, Washington.
"Gentlemen:    Attention of Mr. G. E. M. Pratt.
"Type 59 Cadillac motor cars and chassis purchased by you and shipped by us between January first, 1920, and December 31, 1920, inclusive, will, unless otherwise advised, be invoiced to you at 20% discount from list price, plus government tax and plus such additional charges as the manufacturer may be required to make from time to time.

"Additional discounts for quantity will be allowed as follows: . . .

"The above discounts are on the net billing price and are retroactive for all automobiles and chassis shipped during the calendar year. Total number of Cadillac automobiles and chassis shipped you during the period January first to December 31st, 1920, will determine the rate of discount. These discounts will be paid monthly as earned, provided all commission claims decided by this company to be due have been paid.

"Nothing in this letter should be construed as a liability on the part of our company to any distributor or dealer for such commission.

"Very truly yours,
"CADILLAC MOTOR COMPANY,
"LMcN . CH      General Sales Manager."

This agreement was cancelled by respondent in August, 1920. The trial court was of the opinion that, in view of the last sentence contained in this letter, no legal liability was created thereby which could support any claim such as made by appellant in its third cause of action. At the time of the cancellation of the agreement, respondent paid to appellant the agreed discount on all sales which had been made by appellant up to that date, but refused to pay appellant any increased discount on the sales made by appellant during the remainder of the year 1920. It was stipulated in open court that, in the event appellant should be held entitled to recover upon this item, its recovery should be in the sum of $7,500. There are several copies of the "Distributor Agreements" entered into between respondent and several of its distributors, including the agreement between appellant and respondent, in the record. These contain a provision to the effect that, if a distributor in one territory shall sell a car to a person residing in the territory allotted to another distributor, and if a dispute arises between

the two distributors as to who is entitled to the profit from the sale, the respondent may act as arbitrator and determine which of the two distributors is entitled to the commission, payment to be made accordingly.

We are of the opinion that the trial court erroneously granted respondent's motion to dismiss appellant's third cause of action. The letter under date February 19, *supra,* appears to differentiate between discounts and commission. The two words are not synonymous. Other exhibits in the record offer a reasonable explanation of this letter, and in regard to this cause of action, the record shows a *prima facie* case on the part of appellant. It appears that appellant acted upon the letter, and respondent paid discounts earned by appellant thereunder. This showed a sufficient acceptance of the offer by appellant. *Pennington & Co. v. Hedlund Box & Shingle Co.,* 116 Wash. 292, 199 Pac. 235.

In the letter from respondent to appellant, above quoted, the word "commission" does not appear until the last sentence of the next to the last paragraph when "commission claims" are referred to, while the word "discount" is previously employed five times. In this same sentence, the discounts to be earned by appellant are mentioned, and monthly payment thereof provided for. The words "commission claims" used in this sentence must have meant something to the parties concerned. Monthly payment of the discounts was made contingent upon the fact that "all commission claims decided by this company to be due shall have been paid." "Commission claims" and "discounts" appear to be two different things. The letter itself does not furnish any adequate explanation of what the "commission claims" mentioned in the letter were, but reference to the original "Cadillac Selling Agreement (Distributor)" entered into between

the parties to this action, discloses a reasonable explanation of what the phrase "commission claims" meant.

The saving clause contained in the last paragraph of the letter of February 19, referring to "such commission," evidently refers to the "commission claims" above mentioned, which is manifest both from the use of the word "commission," instead of the word "discount," and from the reference to any liability to "any distributor or dealer," whereas if the exemption had been intended to apply to the addressee of the letter only, the words "any distributor or dealer" would probably have been omitted as they would have filled no purpose, if only a possible liability from respondent to appellant was being guarded against.

The judgment of the trial court is reversed, in so far as the same dismissed appellant's third cause of action, with instructions to grant appellant a new trial as to this cause of action. In all other respects the judgment is affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and TOLMAN, JJ., concur.