[No. 8645–3–III.   Division Three.   December 8, 1988.]

DOUGLAS E. WEIMERSKIRCH, ET AL, *Respondents,* v. MARLA W. LEANDER, *Appellant.*

*Thomas Benner,* for appellant.

*Michael Tabler,* for respondents.

THOMPSON, C.J.—Douglas and Steven Weimerskirch, d/b/a Weimerskirch Brothers, obtained a judgment declaring that contracts they had entered into with the federal government and their lessor could not be terminated without their consent. Marla Leander, as the successor in interest to the lessor, appeals. At issue is whether a provision in the lease giving the lessor the right to sell the property survived the signing of the federal contracts. We affirm.

Marla and Kay D. Leander were divorced in 1982. Following the divorce, Kay Leander continued to farm his family's land in Douglas County. In January 1985, he leased approximately 950 acres of this property for 10 years to Weimerskirch Brothers. On February 27, 1985, they entered into an amended lease which added about 200 acres to the original agreement. The lease provided:

### X

If, at any time during the term of this lease, lessor should decide to offer the real estate described herein for sale, he shall first offer the property to the lessee at the same price and on the same terms of the intended sale. Lessee shall have ninety (90) days . . . to accept or reject . . .

. . .

### XIV

Participation in any government programs now in effect or which may hereafter become effective shall be mutually agreed upon between lessor and lessee at the time any decision is required to be made according to the terms of any such program.

In early 1986 the Commodity Credit Corporation (CCC) of the United States Department of Agriculture offered payments to farmers who agreed to place land in the Conservation Reserve Program (CRP) for a 10–year period. The purposes of the CRP are to protect highly erodible soil from further erosion and to reduce the surplus of commodities. Mr. Leander and Weimerskirch Brothers agreed to submit the leased acreage to the CRP, and in May and August 1986, they entered into two CRP contracts. Mr. Leander and Marla received 100 percent of the CRP payments under a contract which covered 903.2 acres, and Weimerskirch Brothers received 100 percent of the payments under a second contract which covered 386.3 acres. The latter contract also involved about 160 acres of land owned by Eugene Weimerskirch, the father of Douglas and Steven.

The CRP contracts provided that if the land were sold, the new owner could become a participant in the contract or could offer to enter into a new CRP contract. If the new owner chose not to leave the land in the CRP program, certain penalties were incurred.[1] Each of the contracts specifically stated: "[T]his Contract may not be revoked or revised unless by mutual agreement between the parties."

---

[1]The CRP contracts stated:

In September 1986, Mr. Leander notified Weimerskirch Brothers by letter that he had received an offer of $446,000 for the property covered by the lease. He asked them whether they wanted to exercise their right of first refusal under paragraph X of the lease. Weimerskirch Brothers responded:

> [T]he CRP agreements have effectively modified the terms of our original lease agreement. Weimerskirch Brothers is entitled to receive its designated portion of CRP proceeds during the 10 year program period. Any sale of the land will be subject to Weimerskirch Brothers leasehold rights as now modified by the CRP program.
>
> As for the sale price and payment terms which are described in your September 16 letter, they seem so excessive that we must question whether or not there is actually a bona fide sale pending.

In January 1987, Mr. Leander sold the property to his former wife Marla Leander for $219,000. Of that price, Ms. Leander was given credit for an $86,000 down payment. The $86,000 consisted of the money Mr. Leander owed her (1) as property settlement under the terms of the divorce decree, and (2) for a loan she had made him a year earlier.

---

"26 Transfer of Land

"A (1) If a new owner or operator purchases or obtains the right and interest in, or right to occupancy, the land subject to this Contract, such new owner or operator may become a participant to this Contract with the same terms and conditions or may offer to enter into a new CRP contract with CCC covering such transferred land.

"(2) If the new owner or operator becomes a participant to this Contract, the new owner or operator shall assume all obligations under this Contract of the previous participant with respect to the transferred land.

". . .

"B If a participant transfers all or part of the right and interest in, or right to occupancy, the land subject to this Contract and the new owner or operator does not become a participant to this Contract or a new CRP contract in accordance with the provisions of 7 CFR § 704.20, this Contract shall be terminated on the affected portion of the land subject to this Contract and such participant:

"(1) Must forfeit all rights to any future annual rental or cost–share payments with respect to the transferred acreage; and

"(2) Must refund all or part of the payments plus interest, as determined by CCC, that have been made on the transferred land, . . ."

The real estate contract did not mention the CRP contracts. After the sale, Ms. Leander notified Weimerskirch Brothers she considered their rights under the lease forfeited, and requested all CRP payments on her land be sent to her.

Weimerskirch Brothers brought this action asking that they be declared contractually entitled to the CRP payments. At trial, testimony focused on the oral negotiations between Mr. Leander and Eugene Weimerskirch for the lease and for the subsequent CRP contracts. Eugene was the person dealing with Mr. Leander on behalf of his sons during these negotiations. He agreed that, at the time of the lease, the parties understood Mr. Leander retained the right to sell the leased land. However, Eugene testified he did not recall discussing with Mr. Leander what effect a sale would have on the proposed CRP contracts. He stated that after those contracts were signed, Mr. Leander asked him what would happen if the land were sold, and he responded: "Well, that's something that you'll have to work out with the brothers." Over defense objection, Weimerskirch Brothers presented the opinion testimony of Allen Hartley, a farm management consultant, that the parties' rights were governed by the CRP contracts, not the lease.

On the other hand, Mr. Leander testified:

> One conversation was in front of my shop in late July, August, first of August. That is when I told Mr. Weimerskirch, you understand that if you don't buy it, I still have the right to sell this. I wanted to make that clear to him because I was in no position to tie that up for 10 years. And he said, yes, I understand that, but why would you want to sell it when you can still have it in ten years?

Mr. Leander's present wife, Shannon, testified that when Eugene Weimerskirch brought the second CRP contract to the house for her husband to sign, Mr. Leander advised him that there might be a sale in the near future. Nevertheless, Eugene urged him to sign, arguing that he needed to get his portion of the acreage into the program and that

if a sale occurred, they always could release the Leander land from the contract.

The trial court concluded the lease was terminated and replaced by the CRP contracts, Ms. Leander received actual notice of Weimerskirch Brothers' interest before she purchased the property, and her purchase was subject to Weimerskirch Brothers' preexisting contract rights.

First, Ms. Leander contends the CRP contracts did not bind subsequent purchasers such as herself. She relies on the fact that the contracts provide options to a new owner if a sale occurs; *i.e.,* the new owner can choose either to participate in the Conservation Reserve Program or not. But the contracts also provide that they shall not be revoked or revised "unless by mutual agreement between the parties". An ambiguity will not be read into a contract where it reasonably can be avoided by interpreting the contract as a whole. *McGary v. Westlake Investors,* 99 Wn.2d 280, 285, 661 P.2d 971 (1983). In order to give effect to the entire CRP contract, the provisions giving options to new owners must be read as applying in those situations in which all the parties to the CRP contract agree to the terms of the sale.

Second, Ms. Leander asserts the CRP contracts did not modify the lease. She argues Mr. Leander never intended to give up his right to sell, and modification of an existing contract requires a meeting of the parties' minds. *Hanson v. Puget Sound Nav. Co.,* 52 Wn.2d 124, 127, 323 P.2d 655 (1958).

However, the court here found: "During the spring of 1986 the plaintiffs and their landlord, K.D. Leander, mutually agreed to place the entire leased premises in the Conservation Reserve Program." Ms. Leander does not assign error to this finding. "[T]he legal effect of a subsequent contract between the same parties and covering the same subject–matter as an earlier agreement . . . [but] containing terms inconsistent with the prior contract . . . is to rescind the earlier contract". *Smith v. Cadillac Motor Car Co.,* 152 Wash. 131, 140–41, 277 P. 453 (1929). *See also*

*Bader v. Moore Bldg. Co.,* 94 Wash. 221, 224, 162 P. 8 (1917); *Nib Foods, Inc. v. Mally,* 70 Mich. App. 553, 246 N.W.2d 317, 321 (1976); 17 Am. Jur. 2d *Contracts* § 493 (1964). The terms of the CRP contracts are inconsistent with those of the earlier lease. The purpose of the lease was to permit cultivation of the acreage by Weimerskirch Brothers whose rent was calculated as a percentage of crops raised. Under the CRP contracts, the acreage was taken out of production. In addition, the provision in the lease regarding a sale conflicts with the provisions of the CRP contracts that they shall not be revoked or revised "unless by mutual agreement between the parties".

■ Mr. Leander's testimony that he had communicated to Weimerskirch Brothers an intent contrary to the language of the CRP contracts is contradicted by the testimony of the Weimerskirch family. None of them recalled any discussions with Mr. Leander about the effect of a sale on the CRP contracts. The existence of contractual intention is ordinarily a question of fact. *In re Estate of Richardson,* 11 Wn. App. 758, 761, 525 P.2d 816 (1974). Thus, the court, as the trier of fact, could choose to rely on the Weimerskirches' testimony. Furthermore, Mr. Leander's unexpressed intentions can have no bearing on the question of the parties' mutual intention. Washington adheres to the objective manifestation theory of contracts which imputes to a person an intention corresponding to the reasonable meaning of his words and acts. *Dwelley v. Chesterfield,* 88 Wn.2d 331, 335, 560 P.2d 353 (1977).

Accordingly, we uphold the Superior Court's determination that the CRP contracts terminated the lease.

Third, Marla Leander argues the court erred when it allowed Mr. Hartley to give his opinion on whether the CRP contract prevailed over the lease. Mr. Hartley should not have been allowed to testify concerning the legal effect of the CRP contracts. *See Energy Oils, Inc. v. Montana Power Co.,* 626 F.2d 731, 737 (9th Cir. 1980), and authorities cited there. *See also* 5A K. Tegland, Wash. Prac., *Evidence* § 309 (2d ed. 1982). However, any alleged error was

harmless because the language of the CRP contracts justified the court's conclusion that those contracts terminated the lease. Furthermore, the trial judge stated that he would accord such weight to Mr. Hartley's testimony as he deemed appropriate. The potential for confusion and prejudice is much less when the trier of fact is a judge and not a jury.

Affirmed.

GREEN and MUNSON, JJ., concur.