[No. 25191–1–I.   Division One.   January 28, 1991.]

LISA ANN HADLEY, ET AL, *Appellants,* V. BERNADETTE
COWAN, ET AL, *Respondents.*

*Donald J. Horowitz, David S. Vogel,* and *Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* for appellants.

*J. Ronald Sim* and *Jill Bowman,* for respondents.

FORREST, J.—Robert and Lisa Hadley appeal the trial court's summary judgment dismissing their tort action against respondents. We affirm.

This dispute involves three generations in one family, with two grandchildren suing their maternal grandmother and aunts[1] over issues arising out of the last will of their mother, Claudette M. Hadley.

Claudette and Richard Hadley married in 1964; within a year Claudette developed multiple sclerosis. Claudette bore two children, Robert and Lisa, appellants here. In January 1975, the Hadleys separated, and Claudette moved in with her mother, Bernadette Cowan. Richard Hadley filed for divorce, a trial was held, and a decree of dissolution entered on June 16, 1976. The court awarded Richard Hadley custody of the two minor children because Claudette's physical disabilities prevented her from taking adequate care of the children, although the court found that "Claudette possesses the necessary moral and intellectual qualifications to have custody of the minor children of the parties". Claudette received approximately $545,000 plus $480,000 in maintenance at $4,000 a month for 10 years.[2]

According to Richard Hadley, as Claudette's health deteriorated, her mother, Bernadette, began exerting more influence over her, controlling the times that Claudette could meet with her children, for example, and strongly discouraging contact with the outside world. After dissolution of the Hadleys' marriage, on June 22, 1976, Claudette executed her last will, superseding earlier wills that had been more generous to her children, and less generous to her mother and sisters.

Nine years later, on September 24, 1985, Claudette died, and her will was admitted to probate October 3, 1985. Bequests included $50,000 in trust for each of her two children, $50,000 to her mother, and $25,000 each to her two

---

[1]The children, Robert and Lisa Hadley, will be designated Children, and the maternal grandmother, Bernadette Cowan, and the two aunts, Jo Ann Cowan and Patricia Elaine Cowan, will be referred to as Legatees.

[2]The settlement was affirmed on appeal in *In re Marriage of Hadley*, 88 Wn.2d 649, 565 P.2d 790 (1977). At the time of trial, the Hadleys' net worth was approximately $9.4 million.

sisters. The balance of the estate was left in trust with the net income to go to her mother for life, then to her sisters (the appellants' aunts) in equal shares, with no additional bequest to the appellants' trusts. The trustee was empowered to distribute principle if the mother or sisters needed funds for their welfare.

Following admission of the will to probate, the appellants filed a petition in February 1986 contesting the will, alleging that Claudette was infirm and not of sound mind at the time the will was executed. On June 16, 1986, the appellants agreed to settle and dismiss their will contest in exchange for a $30,000 contribution into each child's trust. The settlement, after reciting relevant provisions of the contested will, provided that:

1. The Children shall dismiss with prejudice their Petition pending in the Superior Court of the State of Washington for King County under Cause No. 85–4–03411–0.
2. The Children acknowledge that the Will is valid and binding in all respects.
3. All parties shall endeavor to foster the close and loving relationship that exists between the Children and the Legatees and further that each will use all reasonable efforts with others to cause such others to refrain from, in any manner or form, disrupting such relationship.
. . . .
5. The children confirm their intent in all respects that the Will as executed by their mother be finally adjudicated and not disturbed.
6. The parties agree to sign and have entered an order of dismissal finally dismissing with prejudice the Will contest filed on February 5, 1986.

Proposed settlement language, purposefully left out of the settlement agreement, stated:

(1) That the will contestants agree that Claudette Hadley was not mentally incompetent at the time of the execution of the Will;
(2) That there exists no case against any of the beneficiaries for any influence that the beneficiaries are alleged to have exerted over Mrs. Hadley . . ..

James Salter, attorney at the time for the Children, stated that he had discussed this language with his clients "and

they rejected it, feeling that it might be used to preclude a subsequent action in tort." After the parties signed and the funds were distributed under the terms of the settlement agreement, a declaration of completion of probate was entered.

On September 23, 1988, the Children filed the present tort action, alleging that the making and execution of Claudette's will was

a result of improper conduct and wrongdoing on the part of defendants Bernadette Cowan, Jo Ann Cowan and Patricia Elaine Cowan Lange individually and/or in concert. Said conduct began to take effect and manifested itself between September, 1974 and June, 1976 and continued thereafter until the death of Claudette M. Hadley on September 24, 1985 in King County, Washington. The improper and wrongful conduct includes, but is not limited to defendants' exercising undue influence upon Claudette M. Hadley, overreaching her, imposing duress upon her, committing fraud upon her, abusing her confidence, substituting their intent for hers, and other wrongful conduct.

The complaint further alleged the tort of outrage and interference with the parent–child relationship, and that the plaintiffs have "sustained significant and continuing emotional injuries, pain and suffering, humiliation and embarrassment, past, present and future."

Respondents moved for summary judgment, which the court granted on October 27, 1989, in an order of dismissal with prejudice.

The Legatees offer two theories in support of the summary judgment: (1) the suit is barred by the terms of the settlement agreement; and (2) the suit is barred by res judicata and collateral estoppel.

### Settlement Agreement as to Will Issues

The settlement states that the Children shall dismiss with prejudice their petition challenging probate, that the will is "valid and binding in all respects," and that the parties intended the will "as executed . . . [to] be finally adjudicated and not disturbed."

██ ██ The Children argue that they reserved issues of fraud, undue influence, overreaching, duress and abuse of confidence for future tort litigation independent of the will contest by deleting the proposed settlement clauses. They are incorrect; the agreement settled all issues concerning their loss of inheritance.[3] In construing the contract, this court must first look to the language of the agreement,[4] not expressions absent from the agreement. Moreover, the parol evidence rule precludes such testimony where the agreement is unambiguous.[5]

██ The reasonable reading of the parties' agreement is that in exchange for $60,000, the Children waived their right to undermine the validity of the will or undo its property distribution. The Legatees reasonably believed that all claims directly or indirectly attacking Claudette's will, such as fraud, undue influence, or duress, had been settled. Family settlements such as this should be accorded

---

[3]The petition contesting the validity of the will stated in part that

"(a) [Claudette] was not of sound and disposing mind, memory and understanding at the time of execution; (b) she did not at the time of execution of the purported document know or comprehend the objects of her bounty and affection; (c) she was so weak mentally and physically that the purported will was not of her free and voluntary act and deed . . .".

The claims of outrage and intentional interference with the parent/child relationship are considered separately in this opinion.

[4]"Washington adheres to the objective manifestation theory of contracts which imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Weimerskirch v. Leander,* 52 Wn. App. 807, 813, 764 P.2d 663 (1988).

[5]*Emrich v. Connell,* 105 Wn.2d 551, 555–56, 716 P.2d 863 (1986):
> [P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake.

*Buyken v. Ertner,* 33 Wn.2d 334, 341, 205 P.2d 628 (1949). . . . [C]ontemporaneous negotiations and agreements are said to merge into the final, written contract, and any evidence of these, even if admitted without objection, is rendered incompetent and immaterial by operation of the [parol evidence] rule.

finality to the fullest extent possible, and should be encouraged and fostered as a matter of public policy.[6] Furthermore, the parties' intention of finality is also evident in the settlement's third paragraph (discussed later), in which the parties promise to refrain from disrupting their loving relationship. We believe that the intention to finally resolve issues concerning the validity of the will and its financial consequences is clear.

■ If the Children consciously intended to preserve causes of action challenging the distribution provided by their mother's will, they could have done so in the settlement agreement itself. Of course, had they explicitly stated their intention, settlement would have been highly unlikely. It follows that the intention to preserve their causes of action was secret. This court will not strain to interpret a contract in favor of secret or undisclosed intentions that are at odds with the fair meaning of the document. We therefore find the settlement agreement binding as to all issues and facts bearing on the validity of the will and consequent loss of inheritance.

### RES JUDICATA

■ The Legatees assert that the decree dismissing the will contest acts as res judicata in precluding the Children's claims. Res judicata applies to claims that were, or should have been, litigated in a prior proceeding between the parties, including settlement agreements.[7]

■■ The Children first argue that the probate action cannot act as res judicata because it is essentially a proceeding in rem. However, a probate court has all the powers

---

[6]*In re Estate of Witte*, 25 Wn.2d 487, 498, 171 P.2d 183 (1946).

[7]"[A] final order or judgment, settled and entered by agreement or consent of the parties, is no less effective as a bar or estoppel than is one which is rendered upon contest and trial". *LeBire v. Department of Labor & Indus.*, 14 Wn.2d 407, 418, 128 P.2d 308 (1942).

of a court of general jurisdiction.[8] Furthermore, the distinction between in rem and in personam may be somewhat artificial. We agree with the reasoning in *DiMauro v. Pavia*, 492 F. Supp. 1051, 1062 (D. Conn.), *aff'd without opinion*, 614 F.2d 1286 (1979), *cert. denied*, 446 U.S. 939, 64 L. Ed. 2d 792, 100 S. Ct. 2160 (1980), that although a probate action is in rem,

> labels are not dispositive of the issues . . .. A probate proceeding for a final accounting names no one as defendant, but adequate notice brings interested parties to court, nonetheless.
> . . .
>      . . . [T]he probate court in this case had before it the entire assets of the estate in this country and the fiduciary in charge of their disposition. Its jurisdiction is in the nature of *in rem* or *quasi in rem* to the extent that it determines the interests of beneficiaries in the property in question, and in the nature of *in personam* as to the claims of the beneficiaries against the administrator arising out of the administration of the funds.

The Children claim that the probate court could not have considered actions in tort, such as interference with the parent/child relationship, or the tort of interference with a parent's testamentary gifts. This is not the law in Washington, however.[9] We hold that although the probate action was ostensibly in rem, it may have res judicata effect in a later in personam tort action.

■ Res judicata applies when "[a] valid and final personal judgment rendered in favor of the defendant bars

---

[8]*In re Adamec*, 100 Wn.2d 166, 175, 667 P.2d 1085 (1983).

The court in *Bostock v. Brown*, 198 Wash. 288, 292, 88 P.2d 445 (1939), considering the alleged fraud of an executor, stated that "[t]he order in probate . . . is final and *res adjudicata* of all matters covered by that order and all questions that should have been raised at the hearing upon the final account and petition for distribution. *In re Doane's Estate*, 64 Wash. 303, 116 Pac. 847 [1911]."

[9]The court in *Filley v. Murphy*, 30 Wash. 1, 5, 70 P. 107 (1902) stated that: "when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why it may not settle the issues thereunder when an appearance has been made thereto, and then proceed to try it in a proper manner, as any other civil cause."

another action by the plaintiff on the same claim." Restatement (Second) of Judgments § 19 (1982). For the doctrine to apply, substantial identity must exist between the successive proceedings, including settlement agreements.[10] Washington courts have stated that between the prior and subsequent actions there must be

> identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.

*Rains v. State,* 100 Wn.2d 660, 663, 674 P.2d 165 (1983) (citing *Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 588 P.2d 725 (1978)).

■ To avoid the effect of res judicata, the Children principally contend that there is no identity between the successive causes of action as required for application of res judicata. In determining whether there is identity of causes of action, res judicata, unlike collateral estoppel, applies to what *might* or should have been litigated as well as what was litigated.[11] In Washington a number of tests for the identity of causes of action have been used.

> While identity of causes of action "cannot be determined precisely by mechanistic application of a simple test", *Abramson v. University of Hawaii,* 594 F.2d 202, 206 (9th Cir. 1979), the following criteria have been considered:
> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether

---

[10]Settlement agreements are given res judicata effect as to the issues that were or should have been resolved in the lawsuit. *LeBire.*

[11]"Res judicata acts to prevent relitigation of claims that were or should have been decided among the parties in an earlier proceeding." *Norris v. Norris,* 95 Wn.2d 124, 130, 622 P.2d 816 (1980).

That does not mean that a claimant must join every claim or cause of action—CR 18(a) permits (*i.e.,* does not require) joinder of all claims. Thus, judgment on one claim does not preclude suit on another independent claim, even though the actions could have been joined.

the two suits arise out of the same transactional nucleus of facts. *Constantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir.), *cert. denied,* 103 S. Ct. 570 (1982) (quoting *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir. 1980)).

*Rains,* at 663–64.[12]

The allegations of undue influence, abuse of confidence, fraud, and substitution of respondents' will for the deceased's will all are of a single "transactional nucleus of facts" that could and should have been determined in the probate challenge. The damages resulting from the alleged conduct in the present case and in the probate challenge are substantially the same and are intimately related in time, origin, and motivation, because they arise out of the

---

[12]Another test for identity of claims was utilized in *Mellor v. Chamberlin,* 100 Wn.2d 643, 646, 673 P.2d 610 (1983):

> It has been said that the claim is the same if the same primary right is violated by the same wrong in both actions, or if the evidence needed to support the second action would have sustained the first action[.]

(Footnotes omitted.) 2 L. Orland, Wash. Prac., *Trial Practice* § 360, at 400–01 (3d ed. 1972).

Confronted with this variety of tests, one commentator has stated that courts may in fact be applying a commonsense functional approach to the question of identity, and

> a better approach would simply be to state so. This would make clear to all what actually transpires. Perhaps that is what the court had in mind in a recent case when it listed as a relevant consideration, "whether the two suits arise out of the same transactional nucleus of facts." Regardless of the court's intent, this should be the approach.

(Footnote omitted.) Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 Wash. L. Rev. 805, 817 (1985) (citing *Rains*). Professor Trautman points to the Restatement (Second) of Judgments for the meaning of "the same transactional nucleus of facts."

Further, Restatement (Second) of Judgments § 24 (1982) states:

> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

same interactions between the deceased and the respondents. It is also obvious that the claims in the present proceedings would have constituted a convenient trial unit in the probate proceeding.[13]

Accordingly, we hold that the Children's claims alleging improper conduct concerning the will and the loss of inheritance flowing from the will are precluded by the doctrine of res judicata.

On the other hand, the causes of action for interference with the parent/child relationship and the associated tort of outrage[14] are different in many respects from the probate challenge. These acts are alleged to have occurred after (as well as before) Claudette executed her final will, do not necessarily share the same facts, and embrace distinct legal theories which could constitute a cause of action if the will were never at issue. Thus, the doctrine of res judicata does not preclude these claims, although we hold that they are precluded for the reasons that follow.

### Settlement Agreement as to Interference With Parent/Child Relationship

The Legatees' tortious interference with the parent/child relationship necessarily occurred prior to the mother's death and would be well known to the Children at the time of executing the settlement. Yet the settlement purports to resolve all the existing disputes between the Children and the Legatees, and specifically provides:

(3) All parties shall endeavor to foster the close and loving relationship that exists between the Children and the Legatees

---

[13]The other tests formulated in *Mellor* and *Rains* yield the same result. For example, evidence in the present action would sustain the first action, interests established in the prior judgment (*i.e.*, the settlement agreement) would be destroyed or impaired in the present tort action that alleges undue influence, and substantially the same evidence would be presented in the two actions, *i.e.*, that respondents' actions improperly affected Claudette's intention concerning the will.

[14]The two torts stand or fall together, so when we refer to the interference with the parent/child relationship, we include the tort of outrage.

and further that each will use all reasonable efforts with others to cause such others to refrain from, in any manner or form, disrupting such relationship.

This language is consistent with a full settlement, and inconsistent with the intention to preserve a lawsuit for tortious interference. If the Children contemplated such a lawsuit at the time of signing, it was a secret intention in conflict with the document. Arguably, such intention would make the phrase "close and loving relationship *that exists*" (italics ours) a fraudulent misrepresentation of a material fact to induce the Legatees to sign the settlement and pay $60,000 to the Children.

The agreement's third paragraph contains an express promise to foster a close and loving relationship. It is hard to imagine any action less conducive to fostering a loving relationship than children suing their grandmother and aunts for intentionally interfering with the parent/child relationship. Absent an allegation of a legal excuse, we hold that, as a matter of law, a suit with the present allegations breaches the promise to foster a close and loving relationship.

It is not altogether clear what considerations the trial court relied upon in granting the summary judgment. However, on appeal, an order may be sustained on any basis supported by the record.[15] The settlement contract before the trial court makes a prima facie case that the Children's suit is barred. The burden is on the Children to establish issues of material fact that would preclude applying the contract as written,[16] such as a breach by the Legatees. Because there is no such showing, we find no error in the trial court's grant of summary judgment dismissing the claims for outrage and interference with the parent/child relationship.

[15]*LaMon v. Butler*, 112 Wn.2d 193, 200–01, 770 P.2d 1027, *cert. denied*, 110 S. Ct. 61 (1989).

[16]*Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 770 P.2d 182 (1989).

445

Affirmed.

GROSSE, C.J., and DEIERLEIN, J. Pro Tem., concur.