

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 34751-6-III |
| BETTY L. LOWE. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — Aaron Lowe appeals the order approving the final report and petition for decree of distribution entered in the probate of the estate of his late mother, Betty Lowe. We find no error, affirm, and award fees and costs on appeal to the personal representative and the estate.

FACTS AND PROCEDURAL BACKGROUND

A 2013 trial in this same probate proceeding is the subject matter of our earlier decision in *In re Estate of Lowe*, 191 Wn. App. 216, 361 P.3d 789 (2015). Given the limited record in this appeal, we rely on that decision for many of the background facts.

Betty Lowe died on October 1, 2011. Her will, which she had executed in 2003, named her youngest son, Lonnie,[1] as personal representative. Lonnie was to serve without bond and with nonintervention powers. Her will directed that 80 percent of her estate be distributed among Lonnie and her two other sons, Aaron and Larry, and that the remaining 20 percent be distributed equally among her grandchildren. Article II of Betty's will stated, "If I leave a list of written instructions for disposition of any of my tangible personal property, I direct that such property listed in those instructions be distributed to the persons named to receive such property in the written instructions." *Id.* at 222.

Sometime in the 1980s, Donald Lowe, Betty's husband and her children's father, hid silver bars and coins in various places throughout the home. Lonnie and Aaron were aware that most of the silver was hidden in the flue of the fireplace in the basement. Between 2004 and 2007, Lonnie, at Betty's direction and in her presence, removed the silver bars and coins from the family home and placed them in a locked safe in his home in Olympia. Lonnie sold at least one of the silver bars at Betty's direction to pay her expenses. Lonnie admitted that he did not inventory or account for the silver, nor did he keep track of what Betty asked him to sell.

---

[1] Given the common last name, we refer to the Lowe family members by their first names. We intend no disrespect.

2

In September 2007, Betty's lawyer drafted and Betty signed written instructions, as contemplated by her will, stating that Lonnie had discretion whether to divide or retain the silver coins and bars remaining in her estate at the time of her death. Lonnie was aware of her intent to sign the instructions but was not present.

Lonnie later testified that his mother gifted him money at various times. Although Betty had executed a general power of attorney in favor of Lonnie in 2003, Lonnie testified that during his mother's lifetime, he never relied on his authority under the power of attorney to gift himself any of her money or property.

In late October 2011, Lonnie filed a petition for an order admitting Betty's will to probate and was appointed personal representative. After his mother's death, Lonnie sold some of the silver coins and kept the proceeds, relying on his mother's written instructions and his nonintervention powers.

In February 2012, Aaron filed suit against Lonnie individually and as personal representative of Betty's estate. In his petition and subsequent amended petitions, Aaron sought an order requiring Lonnie to account for all estate assets, including the silver. He also sought an order removing Lonnie as personal representative.

Less than a month before trial was to begin, on August 23, 2013, Aaron filed a motion seeking leave to file a second amended and supplemental petition. Included in that petition was an argument that Lonnie should not inherit anything because he

financially abused Betty. Aaron asked that all of the property removed by Lonnie be returned to the estate. The trial court denied Aaron's motion and proceeded to trial.

Following the conclusion of trial, the trial court entered findings of fact and conclusions of law. It denied all relief sought by Aaron and ordered Aaron to pay Lonnie's and the estate's attorney fees.

Aaron appealed to this court. Although his opening brief did not identify the issues pertaining to the assignments of error (*see* RAP 10.3(a)(4)), the headings to his argument reflect the issues raised:

> Lonnie should be removed as Personal Representative as he totally secreted his mother's assets and diverted them to him personally from 2003 on. . . .
>
> One half of the hoard [of silver bars and coins] should have been distributed to Aaron as Don's residuary heir. . . .
>
> The Written Instructions could not transfer U.S. silver coins, the hoard left was all U.S. silver coins. . . .
>
> The Power of Attorney did not allow the gifts to Lonnie Lowe. . . .
>
> The abuser statute was violated; Lonnie Lowe receives nothing and must pay the estate. . . .
>
> The failure to allow the Second Amended and Supplemental Petition is reversible error. . . .
>
> . . . .
>
> Lonnie Lowe intentionally interfered with Aaron Lowe's right to inheritance. . . .

Br. of Appellant, *In re Estate of Lowe*, No. 32192-4-III, at ii (Wash. Ct. App. Dec. 10, 2014). This court affirmed the trial court in all respects. *Lowe*, 191 Wn. App. at 240. Aaron's petition for review by the Washington Supreme Court was denied. *Lowe v.*

*Lowe*, 185 Wn.2d 1019, 369 P.3d 500 (2016). This court issued its mandate on May 26, 2016.

Just over two months later, on August 3, 2016, Lonnie filed a final report and petition for decree of distribution and obtained a hearing date of August 26. The lawyer who had appeared in the probate on Aaron's behalf received timely notice. On August 15, Aaron moved to continue the hearing, claiming the date presented a conflict with his significant other's "long standing, critical surgery deadline . . . that cannot be rescheduled." Clerk's Papers (CP) at 276. Shortly thereafter, he filed an objection and motion for a stay, arguing Betty's estate could not be closed until claims whose merits "[t]he appellate court did not address" were resolved. CP at 291. In support of his objection, he filed nearly 100 pages of the transcript and exhibits from the 2013 trial.

The trial court denied Aaron's motion to continue and the hearing proceeded as scheduled. Aaron's lawyer was present. Although the trial court had agreed to allow Aaron to participate by telephone and the bailiff attempted to phone Aaron at the number provided by his lawyer, the call reached only Aaron's voicemail. The proceeding continued with oral argument by Lonnie's and Aaron's lawyers. Aaron claims that he was available for the call but was unaware that the medical facility he was visiting blocked cellular phone signals.

Aaron's lawyer argued to the trial court at the August 26 hearing that Aaron's claim that Lonnie financially abused Betty was "never tried." Verbatim Report of

5

Proceedings at 11.  In response, the court observed that the evidence Aaron offered to support his "new" claim of financial abuse was all derived from the earlier trial.  Asked if he had ever moved the court at the earlier trial to conform his complaint to the evidence, Aaron's lawyer could not remember.

The trial court rejected Aaron's objection, ordered the estate closed, and discharged Lonnie as personal representative.  Aaron appeals.

ANALYSIS

Aaron assigns error to the trial court's (1) proceeding with the August 26 hearing without Aaron's participation, (2) refusing to permit trial on his claims of financial abuse and other wrongdoing by Lonnie (assignments of error 2 and 4-7), and (3) failing to enter findings and conclusions following the August 26 hearing.  We address his arguments in the order stated.

*Proceeding without Aaron's participation*

Aaron contends that as a matter of constitutional due process and statute, he had a right to be present at the hearing on the final account.  We can quickly dispense of his constitutional claim.  "In a civil suit, the parties do not have a constitutional right to be *personally present* during trial."  *Kulas v. Flores*, 255 F.3d 780, 786 (9th Cir. 2001) (emphasis added).  *Kulas* cites *Faucher v. Lopez* for this proposition; *Faucher* was a bankruptcy case in which the alleged bankrupt could not attend a jury trial on the issue of her insolvency.  *See* 411 F.2d 992, 996 (9th Cir. 1969).  On appeal, she argued that her

6

due process rights were violated because she was unable to be present at the trial. The Ninth Circuit Court rejected this claim, noting that Faucher was ably represented at trial by counsel and that "[t]here is no constitutional right of a litigant to be personally present during the trial of a civil proceeding." *Id.* The right to appear and defend in person provided by the Washington Constitution likewise applies only "[i]n criminal prosecutions." WASH. CONST. Art. 1, § 22.

All of the cases Aaron cites for his purported due process right to be personally present deal with criminal proceedings, or the failure to give *notice* to a party, or with a party who was not represented in a proceeding personally *or* by counsel. Aaron received notice of the hearing in this civil matter and appeared by counsel.

Aaron also argues that a statute—RCW 11.76.050—provides that "[a]ny person interested [in a final report and petition for distribution] may file objections to the said report and petition for distribution, or may appear at the time and place fixed for the hearing thereof and present his or her objections thereto." If the statute applied, we fail to see how it was violated. But it does not apply, since an earlier chapter of Title 11, chapter 11.68 RCW, deals with the settlement of estates without administration by personal representatives with nonintervention powers, and Lonnie applied to close the estate under RCW 11.68.100. That statute requires notice "given as provided for in the settlement of estates by a personal representative who has not acquired nonintervention powers." RCW 11.68.100(2). The notice given by Lonnie in compliance with that

7

requirement provided Aaron with the information needed to exercise his opportunity to be heard.

The only issue presented is whether the trial court should have continued the hearing when Aaron, for a reason unknown at the time, could not be reached at the telephone number provided by his lawyer. "Whether a motion for continuance should be granted or denied is a matter of discretion with the trial court, reviewable on appeal for manifest abuse of discretion." *Trummel v. Mitchell*, 156 Wn.2d 653, 670, 131 P.3d 305 (2006). In exercising its discretion, a court may properly consider "the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court." *Id.* at 670-71. Discretion is abused only where no reasonable person would take the view adopted by the trial court. *State v. Sutherland*, 3 Wn. App. 20, 21, 472 P.2d 584 (1970).

Given that the hearing in the then almost five-year-old estate was not an evidentiary hearing and that Aaron's lawyer was present and available to voice any objections, there was no abuse of discretion.

*Res judicata and law of the case*

"Res judicata applies when '[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.'" *Hadley v. Cowan*, 60 Wn. App. 433, 440-41, 804 P.2d 1271 (1991) (alteration in original) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 19 (Am. Law Inst. 1982)). For the doctrine to apply, there must be a substantial identity of subject matter, causes of action, persons and parties, and the quality of the persons for or against whom the claim is made. *Id.* (citing *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)). In determining whether there is identity of causes of action, res judicata applies to what might or should have been litigated as well as what was litigated. *Id.* Among the criteria considered in determining the identity of several causes of action are

> "[w]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Rains*, 100 Wn.2d at 664 (alteration in original) (quoting *Constantini v. Trans World Airlines, Inc.*, 681 F.2d 1199, 1201-02 (9th Cir.), *cert. denied*, 459 U.S. 1087, 103 S. Ct. 570, 74 L. Ed. 2d 932 (1982)).

In *Hadley*, this court held that following the conclusion of a will challenge, an action by beneficiaries of an estate that alleged undue influence, abuse of confidence, fraud, and substitution of one will for another "are of a single 'transactional nucleus of

9

facts' that could and should have been determined in the probate challenge." 60 Wn. App. at 442. The damages in both proceedings "are substantially the same and are intimately related in time, origin, and motivation, because they arise out of the same interactions between the deceased and the respondents," and, "[i]t is also obvious that the claims in the present proceedings would have constituted a convenient trial unit in the probate proceeding." *Id.* at 442-43.

While it is true that claims can be reserved from one action by agreement of the parties or an order of the court, a claim must be "'plainly reserved.'" *Cummings v. Guardianship Servs. of Seattle*, 128 Wn. App. 742, 754, 110 P.3d 796 (2005) (quoting *Case v. Knight*, 129 Wash. 570, 574, 225 P. 645 (1924)). There was no agreed or court-ordered reservation of claims here. Aaron simply moved to amend and supplement too late. "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." RESTATEMENT § 25, cmt. b. As elaborated further in Section 26, comment b. of the *Restatement*,

> It is emphasized that the mere refusal of the court in the first action to allow an amendment of the complaint to permit the plaintiff to introduce additional material with respect to a claim, even where the refusal of the amendment was urged by the defendant, is not a reservation by the court within the meaning of Clause (b). The plaintiff's ordinary recourse against an incorrect refusal of an amendment is direct attack by means of appeal from an adverse judgment.

10

The mere fact that Aaron sought to pursue his original petition and later claims in the same probate proceeding does not change the result. "A judgment may be final in a res judicata sense as to part of an action although the litigation continues as to the rest." *Id.* § 13, cmt. e.[2] Examples given by the *Restatement* comments are bankruptcy or receivership proceedings in which one party's claim may be finally adjudicated although the proceeding is not closed. *Id.* Probates present a similar situation. "[W]hen res judicata is in question a judgment will ordinarily be considered final in respect to a claim (or a separable part of a claim . . . ) if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular type of adjudication." *Id.*, cmt. b. Washington courts have recognized that a summary judgment determination can be res judicata as to matters sought to be asserted later in the same case if it meets this criteria. *E.g.*, *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009) (citing *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 892, 1 P.3d 587 (2000)).

---

[2] For this reason, we disagree with the court in *In re Estate of Heater*, 24 Or. App. 777, 547 P.2d 636, 637 (1976), which believed it had to apply the related law of the case doctrine to reach the result we reach here, because successive claims were asserted in a probate proceeding. Like the Kansas Supreme Court in *In re Estate of Reed*, 236 Kan. 514, 693 P.2d 1156 (1985), we believe that both res judicata and the law of the case doctrine have application.

11

The trial court's decision following the 2013 trial met this criteria for finality. It was even self-characterized as final: it was entitled "Order Confirming Final Trial Judgment and Accepting Formal Appraisal." *See* Amended Notice of Appeal, *In re Estate of Lowe*, No. 32192-4-III, (Wash. Ct. App. Sept. 17, 2014). The order confirmed "the <u>final</u> Trial Judgment entered on May 30, 2014." *Id.* at 4 (alteration in original). While finality for appeal and res judicata purposes are not identical, they are "quite similar." *Ensley*, 152 Wn. App. at 900. By appealing the trial result in 2014, Aaron treated the trial court's order as final. *See* RAP 2.2. This court did not question its finality and appealability.

As Lonnie argues, the trial court's refusal to entertain further challenges by Aaron to Betty's will and Lonnie's actions can also be affirmed on the basis of futility. After denying leave to amend and supplement in 2013, the trial court characterized Aaron's proposed fiduciary abuse claim as futile. While we did not reach the issue of futility in our decision in the prior appeal, a number of the trial court's findings of fact that supported rejecting Aaron's request for Lonnie's removal as personal representative would be fatal to his proposed financial abuse claim.

*Failure to enter findings and conclusions*

Finally, Aaron argues that the trial court was required by CR 52(a) to enter findings of fact and conclusions of law in support of its order closing the estate but failed to do so.

12

CR 52(a)(1) provides generally that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law." Yet "[f]indings of fact and conclusions of law are not necessary . . . [o]n decisions of motions under rules 12 or 56 or any other motion." CR 52(a)(5)(B). Black's defines "motion" as "[a] written or oral application requesting a court to make a specified ruling or order." BLACK'S LAW DICTIONARY 1168 (10th ed. 2014).

The key distinction is whether a matter is "tried" before the court. *State ex rel. Zempel v. Twitchell*, 59 Wn.2d 419, 424, 367 P.2d 985 (1962) (emphasis omitted). A matter cannot be regarded as a trial if issues of fact are not tried. *Id.* While the record and supporting materials required review at the August 26 hearing, nothing was tried upon the facts. Findings and conclusions were not required.

### *Attorney fees*

Lonnie asks on behalf of himself and the estate that we award reasonable attorney fees and costs against Aaron. Under RAP 18.1(a) and RCW 11.96A.150(1) we may award costs, including attorney fees, to any party from any party to the proceedings, after considering any and all factors we deem relevant and appropriate. We exercise our discretion to award fees and costs to Lonnie and the estate from Aaron, subject to the respondents' timely compliance with RAP 18.1(d).

13

No. 34751-6-III
*In re Estate of Lowe*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.