# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DESTINY CORBIN, an individual, and MELANIE ANDREWS, an individual, on behalf of themselves and others similarly situated, | No. 88134-5-I |
| | DIVISION ONE |
| Appellant, | PUBLISHED OPINION |
| v. | |
| LIFE CARE CENTERS OF AMERICA, INC., a Tennessee corporation, | |
| Respondent. | |

BIRK, J. — Destiny Corbin and Melanie Andrews (collectively Corbin) were absent class members in a class action brought by Lamont Atkinson against Life Care Centers of America Inc. (Atkinson action).[1] The Atkinson parties entered into a court approved class action settlement agreement resolving claims for unpaid COVID-19 testing and screening time under the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. Five days after final approval, Corbin, on behalf of putative class members who were also absent class members in the Atkinson action, brought claims against Life Care for unpaid meal break violations under the MWA. The superior court dismissed Corbin's complaint, concluding that claim preclusion[2] barred Corbin's claims because Corbin did not assert them in the

---

[1] King County Superior Court cause no. 22-2-00662-5 SEA.

[2] The parties refer to "claim preclusion" as "res judicata." As the United States Supreme Court has noted, "claim preclusion" and "issue preclusion" "have replaced a more confusing lexicon. Taylor v. Sturgell, 553 U.S. 880, 892 n.5, 128

<u>Atkinson</u> action.  Because the settling parties' intent controls the preclusive effect of a class action settlement agreement, and the parties here intended to release only claims due to unpaid COVID-19 testing and screening, we reverse and remand.

I

A

On January 12, 2022, Lamont Atkinson brought putative class action claims against Life Care for its alleged failure to pay regular and overtime hours to its employees for testing and screening for COVID-19.  Atkinson worked at Life Care as a certified nursing assistant and alleged he was required to undergo COVID-19 testing and screening without pay.  Life Care operates facilities in Washington where it provides nursing and rehabilitation services.

The <u>Atkinson</u> complaint proposed class certification for two classes: a screening class, and a testing class.  Before the court ruled on the parties' motions for and against class certification, Atkinson and Life Care reached a proposed class settlement.  In both the unopposed motions for preliminary and final approval of class action settlement, the proposed class included "[a]ll Washington State employees of Defendant who worked for Defendant in the position of non-exempt hourly worker and who worked at least one shift between February 1, 2020, and the date of preliminary settlement approval."  The unopposed motion for

S. Ct. 2161, 171 L. Ed. 2d 155 (2008).  Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " <u>Id.</u> (citing <u>Migra v. Warren City Sch. Dist. Bd. of Ed.</u>, 465 U.S. 75, 77, n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)).  For clarity and consistency, we use claim preclusion.

preliminary approval and the proposed class settlement agreement contained the same release language for settlement class members. In the class settlement agreement, the settlement class members released Life Care from

> any and all claims that were or could have been asserted in this lawsuit for unpaid wages due to allegedly unpaid [COVID-19] testing and screening relating to the Participating Class Member's employment with Defendant during the Class Period, including any and all associated liquidated damages, penalties, attorneys' fees, costs, interest, and/or any related sums relating to or arising from those claims, whether founded on state, federal or local law.

In contrast, the named plaintiff class representatives in Atkinson, Atkinson and another class representative, agreed to a broader release for their personal claims. They released Life Care from

> all known and unknown claims, promises, causes of action, that they presently may have relating to disputes of any nature arising out of their employment with Defendant (including but not limited to those pursuant to the Fair Labor Standards Act [of 1938, 29 U.S.C., §§ 201-219 (FLSA)], Washington Minimum Wage Act, [ch. 49.46 RCW,] Washington Wage Rebate Act, [RCW 49.52.050,] and any other federal, state, or local law related to wages, meal periods, or rest periods), including any related penalties, liquidated damages, punitive damages, attorney's fees and/or costs to any of the Released Parties through the date of preliminary approval by the Court.

On December 6, 2024, the superior court granted Atkinson's unopposed motion for final approval and certified the settlement class as proposed. The court concluded that the settlement was fair, reasonable, and adequate. The settlement agreement distributed the settlement amount based upon how many minutes class members were off the clock when testing and screening. The court ordered that "all members of the Class: (1) are bound by this Final Judgment; and (2) are forever

3

barred from instituting, maintaining, or prosecuting any claim released by the Settlement Agreement."

B

Five days after the court granted final approval to the Atkinson settlement, on December 11, 2024, Corbin filed a putative class action complaint against Life Care for its alleged willful failure to provide compensation to class members for missed meal periods. Corbin proposed a class including "[a]ll hourly, non-exempt Life Care employees who missed a meal period and were not paid compensation in addition to the pay for the hours they worked during the meal period at any time from December 11, 2021 to the date of certification of the class." Corbin alleged Life Care failed to ensure class members followed policy and, by understaffing its locations, prevented staff from taking meal breaks. The same attorneys who negotiated the Atkinson settlement represent Corbin. Corbin was a member of the Atkinson settlement class.

Life Care moved to dismiss Corbin's complaint, arguing it is barred by claim preclusion. The superior court dismissed Corbin's complaint. Corbin unsuccessfully moved for reconsideration and appeals both the orders granting dismissal and denying reconsideration.[3]

II

We review rulings on CR 12(b)(6) motions de novo. Tavaglione v. Dehkhoda & Qadri, PC, 34 Wn. App. 2d 515, 519, 568 P.3d 1158 (2025). The

---

[3] Because we conclude it was error to grant Life Care's CR 12(b)(6) motion, we do not separately consider the order denying reconsideration.

purpose of a CR 12(b)(6) motion is to "determine if a plaintiff can prove any set of facts that would justify relief." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). "Under CR 12(b)(6), dismissal is appropriate only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery." San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). "The complaint's legal conclusions are not required to be accepted on appeal." Jackson v. Quality Loan Serv. Corp., 186 Wn. App 838, 843, 347 P.3d 487 (2015). We review application of claim preclusion de novo. Carter v. MultiCare Health Sys., 31 Wn. App. 2d 755, 773, 553 P.3d 98 (2024).

A

We first conclude that the settling parties' intent determines the preclusive effect of a class action settlement agreement.

This court addressed a similar scenario in Knuth v. Beneficial Washington, Inc., 107 Wn. App. 727, 31 P.3d 694 (2001). There, the initial action began when a plaintiff brought putative class claims against a loan servicer, alleging the servicer improperly charged borrowers demand and reconveyance fees when borrowers paid off their loans. Id. at 729. Shortly after class certification, the parties settled, with class members releasing all claims that were or could have been asserted against the servicer in that action. Id. at 730. Then, a former absent class member brought putative class claims against the same servicer, alleging the servicer improperly charged a forwarding fee when borrowers paid off their loans. Id. In analyzing claim preclusion, this court looked to the settlement release

5

language, to the order certifying the class for the previous action, and to whether the settlement disposed of the proposed class claims. Id. at 731-33. We said that the second action impaired rights established in the settlement agreement because the settlement agreement specifically released the defendant from any claims that could have been brought by the class at the time. Id. at 732.

In cases not involving class action settlement agreements, Washington decisions have focused on the intent of the parties when determining the preclusive effect of a settlement agreement. See Pederson v. Potter, 103 Wn. App. 62, 73, 11 P.3d 833 (2000) ("If the Pedersons are permitted to pursue their complaint, they will in effect argue they were not obligated to pay the Potters under the terms of the sale because of the breach. Yet the settlement and confession of judgment already established the rights and liabilities of the parties."); Hadley v. Cowan, 60 Wn. App. 433, 444-45, 804 P.2d 1271 (1991) (barring subsequent claims for tortious interference with parent/child relationship where parties had included the phrase "loving relationship that exists" in a settlement agreement).

The Ninth Circuit identified the rationale undergirding Washington law limiting the preclusive effect of a class action settlement to the settling parties' intent in Wojciechowski v. Kohlberg Ventures, LLC, 923 F.3d 685 (9th Cir. 2019). There, the court analyzed the settlement release language and concluded the prior class action settlement agreement did not release claims against a defendant that was not a party to the prior class action. Wojciechowski, 923 F.3d at 690. The claim preclusion inquiry is modified when the earlier action was dismissed based on a settlement agreement. Id. at 689. When a court dismisses an action because

of a settlement agreement, the settlement is " 'stamped with the imprimatur of [a] court with jurisdiction over the parties and the subject matter of the lawsuit.' " Id. (alteration in original) (quoting Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1557 (3rd Cir. 1994)).  Applying a preclusive effect greater than the parties' intentions at settlement would undermine the contractual nature of court approved settlement agreements.  Id. at 691.  Wojciechowski described this as a general principle of preclusion law.  Id.  As described in Knuth, Washington law is in accord. Thus, "[w]e look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement, rather than to general principles of claim preclusion."  Wojciechowski, 923 F.3d at 689-90.

This is especially appropriate for class action settlements binding absent class members.  A class settlement agreement may preclude a party from bringing a related claim in the future " 'even though the claim was not presented and might not have been presentable in the class action,' " but only where the released claim is " 'based on the identical factual predicate as that underlying the claims in the settled class action.' "  Summers v. Sea Mar Cmty. Health Ctrs., 29 Wn. App. 2d 476, 504-05, 541 P.3d 381 (quoting Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010)), review denied sub nom. Barnes v. Sea Mar Cmty. Health Ctr's, 3 Wn.3d 1002, 549 P.3d 112 (2024).  In class action cases, the courts have an independent obligation to protect the interests of the class.  Deien v. Seattle City Light, 26 Wn. App. 2d 57, 65, 527 P.3d 102 (2023).  As a court has said in the analogous setting of the FLSA, "[t]he parties have every right to enter into a

7

settlement that waives claims relating to the existing suit in exchange for a settlement payment. But the Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (rejecting settlement of FLSA collective action among other reasons because release language was "too sweeping to be 'fair and reasonable.'"). Courts look to the operative pleadings, class notice, and the settlement approval process to determine the appropriate scope of a class settlement.[4]

B

We interpret settlement agreements as contracts. Condon v. Condon, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). Washington adheres to the objective manifestation theory of contracts. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "[W]e attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on

---

[4] See McAdams v. Robinson, 26 F.4th 149, 158 (4th Cir. 2022) ("[Federal Rules of Civil Procedure] 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."); In re TikTok, Inc., Consumer Priv. Litig., 713 F. Supp. 3d 470, 487-88 (N.D. Ill. 2024) ("The language of the Settlement Agreement, the consolidated complaint, and representations made during the approval process are all important indica of both the Original Parties' intent as to the release and the court's understanding of that intent at the time of entry of the final approval order."); Nunez v. BAE Sys. San Diego Ship Repair, Inc., 292 F. Supp. 3d 1018, 1047 (S.D. Cal. 2017) (finding the exact factual predicate met where the class notice of released claims stated " 'will be releasing the claims and causes of action asserted in the operative Complaint on file in the Class Action between May 27, 2012 and October 13, 2016, or which could have been alleged based on the facts set forth in the operative Complaint' ").

the unexpressed subjective intent of the parties." Id. "We impute an intention corresponding to the reasonable meaning of the words used." Id. "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Id. at 504. We may interpret particular language of a contract in the context of other contract provisions. C.A. Carey Corp. v. City of Snoqualmie, 29 Wn. App. 2d 890, 907, 547 P.3d 247, review denied, 3 Wn.3d 1012, 554 P.3d 1219 (2024). Washington courts also consider the "context surrounding an instrument's execution." Hearst Commc'ns, 154 Wn.2d at 502. If relevant for determining mutual intent, including the meaning of specific words and terms used, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties. Id. at 502-03.

The Atkinson settlement manifests the parties' intent to settle class claims regarding Life Care's COVID-19 testing and screening practices. For release of claims, the parties agreed the named-party class representatives would release any and all claims "that they presently may have" "related to wages, meal periods, or rest periods" without mention of COVID-19 testing and screening. More narrowly, the absent class members released "any and all claims that were or could have been asserted in this lawsuit for unpaid wages due to allegedly unpaid [COVID-19] testing and screening," but gave no release referencing meal periods. The settlement provides that the absent class members will be paid for "Minutes

9

Off-the-Clock," defined as "the sum of Screening Minutes and Testing Minutes for each Settlement Class Member." The settlement includes definitions for "Screening Class Period," "Testing Class Period," "Screening Shift," "Testing Workweek," "Screening Minutes," and "Testing Minutes," but it does not include any definitions for meal breaks, meal periods, or other employment claims.

The amended complaint proposed two classes, a "Screening Class" and a "Testing Class," who were comprised of members "instructed not to clock into Life Care's electronic time keeping system prior to daily screening" and "who were subject to Life Care's mandatory [COVID-19] testing policy," respectively. It alleged the predominating questions of law and fact common to the proposed class included, "[w]hether Life Care requires employees to undergo [COVID-19] screening during their shift without compensation" and "whether Life Care requires employees to undergo weekly [COVID-19] testing but does not compensate them unless the testing occurs during the employee's regularly scheduled shift."

In the unopposed motion for preliminary approval of settlement, the parties agreed that the settlement amount would be distributed to class members "based proportionally on the number of allegedly unpaid minutes estimated to have been spent testing and screening." Then, the motion for final approval of the settlement stated that class members will be paid for "Minutes Off-the-Clock," which the parties defined as "the sum of Screening Minutes and Testing Minutes for each Settlement Class Member." The motion further stated that if the parties did not settle, the Atkinson plaintiffs would face increased uncertainty in summary judgment motions practice surrounding the commonality of class members'

10

experiences "due to differences in testing and screening practices." The class members' release was specifically limited—in contrast to the named-plaintiff class representatives release—to extend only to claims for COVID-19 testing and screening, and these were the only claims described in the operative complaint, class notice, and motions for preliminary or final approval.

The operative release language covered "claims that were or could have been asserted in this lawsuit for unpaid wages due to allegedly unpaid [COVID-19] testing and screening relating to the Participating Class Member's employment." Life Care argues that the phrase "for unpaid wages due to allegedly unpaid [COVID-19] testing and screening relating to Participating Class members' employment" modifies the term "lawsuit" and does not modify "claims." From this premise, Life Care reasons that the release extends to *claims relating to the class members' employment* that were or could have been brought in the *lawsuit for unpaid wages due to allegedly unpaid COVID-19 testing*. Life Care's interpretation of the "for" phrase modifying lawsuit and not claims is grammatically possible—the "for" phrase could be read in a limited way to modify exclusively "lawsuit." But this reading is not reasonable under the circumstances. Under Life Care's reading, the description of the released claims is no more specific than those that could have been brought in the lawsuit and relate to the class members' employment. In the context of the settlement on behalf of absent class members, the "for" clause describes which "claims" are released, in this case coinciding with the claims asserted in the complaint, described in the class notice, subject to the array of defined terms in the settlement, and analyzed in the motions for settlement

11

approval. Those documents describe exclusively claims based on COVID-19 testing and screening. Moreover, this scope of release falls clearly within the identical factual predicate supported by the operative pleadings, class notice, and motions for settlement approval. Summers, 29 Wn. App. 2d at 504-05.

We conclude the parties intended that the absent class members release only claims for unpaid COVID-19 testing and screening. As a result, the Atkinson settlement does not have preclusive effect barring Corbin's claims for allegedly uncompensated missed meal periods.

Reversed and remanded.

Birk, J.

WE CONCUR:

_____, ACJ